Good morning, your honors, and may it please the court, Lucas Williams for Plaintiff and Appellant Candlestick Heights Community Alliance, I'll call them the Alliance for brevity, if that's okay. That's fine. And if I could reserve two minutes, please. Absolutely. Thank you. Counsel, you have a very soft-spoken voice. If you could make sure you're close to the mic so I can hear you. Absolutely, yeah. Okay. Is that any better? Slightly. Okay. I'll speak up. Yeah. I mean, just, yeah, just try and project. Okay. I think I'm also getting to that point where maybe my hearing is going and... Same.  Okay. So, so this case is about the City of San Francisco polluting a community of color with toxic air pollution without permits. This was a disastrous situation for the members of my client, the Alliance, and we don't think this would have happened in an affluent neighborhood of San Francisco. The trial court's judgment, which is reviewed de novo, should be reversed for three main reasons. So, first, the notice was sufficient. It provided all of the information required by the notice regulation, and it also provided sufficient information for the city to correct the alleged statutory violations. Well, let me stop you there, though. Was the notice sufficient? I mean, here, especially with regards to your, I see it as your second argument with regards to the air pollution. Tell me where in your notice did you provide any citations to the specific regulations regarding the air pollution? Well, so really, two places. We alleged that there were two different permits that were required, both before the equipment was installed and before the equipment was operated. The first kind of permit is called an authority to construct, and that's under SIP regulation 21301. So before, it's kind of like a building permit. Before you put any pollution-emitting equipment at a facility, you need to apply to the air district, and you need to get the air district's okay that the equipment is appropriate, similar to the way a building inspector would. I guess, could you tell me if you cited to regulation 21316 and table 251? No, no. We did not, Your Honor, and our position is that we don't have to. So that's a defense to a permitting exemption. So to the extent that, so let me back up. We do say very clearly in the notice that no exemption applies, no permitting exemption applies. Nowhere in the notice regulation does it require the plaintiff to allege that a defense by the entity receiving the notice of violation. Well, hold on. But if you're saying that they violated this particular regulation, I mean, aren't you going to cite the hazardous air pollutants? If that's what you're saying, that they're violating, I mean, you're saying that they've done that, and that's the specific regulation, and that's not cited in your notice. All right, and it's not, nor could it have been, because we did not know what the emissions, we couldn't have known what their emissions were. So the way it works is there's this 50-horsepower exemption, right, which we knew the city relied on, so we did spend some time, even though it's not required by the notice. Well, you cited, I mean, you cited all the alleged violations in that, so when you read the notice, it appears, and maybe that's what happened, it appears that that's what you were, that was your main argument. You were indicating that that's the violation, you cited the regulations, but you never cited this particular one. You cited all the ones with regards to that, but not this. And that's correct, and that's because it was quite literally impossible for us to do so until we had discovery, until the completion of expert discovery. We didn't, we had no idea that the duration of the generator's operation, we didn't know, we didn't know how big the generators were. So I'm wondering, sorry, in what sense, in what sense there was notice to the city, I mean, if you didn't know how were, I mean, how were they to know that there was this violation? By going to the Air District. So that's what the two permits would have required. The authority to construct would have required them to, before installing the generators, to go to the Air District with the specifications, that's the authority to construct 2-1-3-0-1 in the state implementation plan. And then they would have also had to apply before operating for a permit to operate, and the permit to operate sets the operating conditions. So it would have, the Air District would have determined the emissions, they would have set limits probably on the duration of the operation, they would have likely told the city where they could place the generators so they wouldn't have been placed adjacent to folks. But I guess isn't, Mr. Williams, a potential and maybe better reading of the record is that the city considered the permitting requirements, generally realized that they weren't required for the things it was looking at with respect to the thing that it missed, it abated that by reducing the number of generators. I mean, the plan is several dozen pages long, so if, and the Act requires notice of the violation. If we cast the notice of the violation as saying, you have to get a permit even if your activities are otherwise exempt, or you've abated them before the complaint, how does that fulfill the Act's purpose to give notice to both the parties and the government? Well, so what it does, so the government, the Air District, made a decision not to enforce, so that, of course, gives the citizens the right to enforce the Act. And what the notice did is it very clearly said, you need to get permits before you install, before you operate, and then it also said no exemptions apply. Right, but I think it's hard to read the notice as anything other than targeted on the horsepower question. Almost, I mean, the entire, you haven't pointed us to, you admit that nothing in the notice discusses the toxic regulation that you're now concerned with. Right, and it would have been impossible, so that's the Marina case where it says we can't, I'm sorry. I guess the, but you could have said that, right, so you, the problem is, is the notice just from beginning to end sounds in the horsepower exemption, and it begins and ends and says the problem is the number of generators, not that you're operating one generator that might violate it, but the problem is the number of generators. The city abated, right, so the city abated maybe, arguably, but the city took several lights down. You didn't come back to it and say, ah, but you're still, right, there wasn't some separate notice where you said, no, but you're still violating this other one. Maybe you weren't so clear, but how is that enough notice that in this dozens of page long plan that they're violating this one exemption over there that you never mentioned? It, the, we, so I disagree that the notice was not clear on the fact that, so it's, there's two different allegations, again, so there's the authority to construct, granted, that says 16, you had, you should have had basically a building permit before installing the 16, but then the whole second part of the notice says when you operate more than one generator, you need a permit to operate. So the city very selectively read the notice as just applying to the 16 generators. It didn't, and then again, the notice says no exemption applies, and then, I mean, my- Well, that's just another way of saying, city, you're violating the plan, and we're going to sue. Fix it. Correct. What are they supposed to do with that information? Well, that's all the notice regulation requires, right? So specific activity, generators without permits. Well, that's what the regulation says. The statute says the notice of the violation, and so, and your claim here is that the violation is the failure to get a permit, but that just takes us back into these exemption questions. Our position, the notice regulation, which this circuit's decisions say should be read literally, is what governs here, right? And all of the information was in there. The activity, generators without permits, the emission standard, 2-301, 2-302, and then all the other information, who sent the notice, who the violator was. The city doesn't contend that we didn't fulfill the notice regulation. They, what they do is they read the notice selectively as saying anything less than 50 horsepower is exempt, and we allegedly abated by that time, which we disagree with. Okay. I think you started off with three points, and I think we've gotten hung up on your first. Yeah. And I'm happy, if you have more questions on this. I'm glad you're asking that question, because I do have a question. Let's assume that, let's set aside that second argument, but let's turn to the first argument, which is the argument that, focusing on the 50 BHP theory. Can you explain how the harm you allege is redressable when the city already removed eight out of the 16 generators, making the aggregate BHP output less than 50? So how is it still redressable? So for the, so let me make one point clear. There were still 16 generators at the facility when the complaint was filed. The city agrees with that point. That's page eight of their answering brief. 16 generators without authorities to construct. Can you just explain, where would we close the loop to find the authority for the point that having generators on site would trigger a violation if they're not, if they're no longer operational? Because they need an authority to construct, again, that's the building permit type permit before they're installed. So they didn't do that, and they didn't correct it by the time the complaint was filed. And it's true that seven were operating at the time the complaint was filed, and the notice alleges that you need a permit to operate. That's kind of like the driver's license. That's the parameters for the operation. You need a permit to operate before operating the notice says more than one generator. So that's another allegation that was ongoing at the time the complaint was filed. Other questions? Do you have any other questions right now? Okay, would you like to reserve the remainder of your time for rebuttal, or you wanted to reserve two minutes? You have some time. Yeah, I'll reserve. Okay. All right. Thank you, Your Honors. We'll give you three minutes for rebuttal. Thank you. You may proceed. Thank you. Good morning, and may it please the Court. Deputy City Attorney Kathy Shin for the City and County of San Francisco. Plaintiff appellant's pre-suit notice was inadequate to alert the City to any alleged violation of the SIP that wasn't abated by reducing the total light hours in use below 50 brake horsepower before the complaint was filed. I offer three main points. First, as the Court has already noted, the emissions standard in Section 21316 and Table 251, Appellant's Toxics Trigger, are not in the notice, and the City's response to the notice and the allegations in the complaint thereafter show that the only violation at issue was exceedance of 50 brake horsepower. The Court lacks jurisdiction over any other claims. Well, hold on. Oh, go ahead. The notice does say that the generators emit diesel particulate matter, benzene, nitrogen oxides, dangerous pollutants, so, you know, why isn't that enough to put the City on notice? We've held that you don't have to be exhaustive in listing all the details of a violation. Sure, Your Honor. The notice was focused specifically on the 50 brake horsepower exemption, and even the notice and the complaint admit that notwithstanding the existence of equipment that may be emitting air contaminants, at a certain threshold, permits are not required. This is how the SIP reads. This is how the notice and the complaint read. And so if there was going to be a requirement for permits that defeats the exemption, the categorical exemption for 50 brake horsepower, the notice needed to state so. This is the holding in this Court's decision in ONRC v. Columbia Plywood, where in that decision, the plaintiff alleged that the defendant did not qualify for an exemption for expired permits, based solely on the fact that, or based specifically on the fact that the plaintiff failed to timely apply for the renewal. Ms. Shinn, I guess if we frame it as your friends on the other side do, that the violation is the failure to apply for a permit as opposed to the specific exemptions, why wouldn't that be enough? I guess there'd be some concern that they've gotten themselves in trouble here by saying too much, which wouldn't make sense under a notice standard, because they said all this other stuff about the number of generators. They'd taken themselves out of the toxic question. Thank you, Your Honor. Yes. If, and you have addressed my second point, which is, appellants argue before this Court that the alleged violation in the notice and the complaint was, in fact, a failure to obtain permits under Section 301 and 302 of the SIP, which are the general requirements for a permit. And the response there is that the district court did not agree that that was, that violation was sufficiently alleged in the notice. And the response to that is there is an exemption, which the notice and the complaint also acknowledge, an exemption for equipment, small, equipment with small engines that are 50 brake horsepower or less. The only way in which the, the only theory of violation alleged in the notice and the complaint is aggregation. That is the only way in which appellants inform the city that the exemption did not apply. The idea that the Air District was uninformed is, is incorrect. Upon receiving the notice, the city conferred with the Air District, which confirmed that the equipment at issue was not exempt. And in fact, the complaint at paragraph 22 and the notice itself states that appellants learned of the 16 light towers at issue from an Air District inspector who notified that each of the light towers are below 50 horsepower and therefore exempt. And this is the significance of the more than one allegation in the notice. At the time that the notice was provided, appellants were aware that each of the light towers at issue were below 50 horsepower. And that is at page ER394, bottom of the page, which states that on October 4th, 2022, in a meeting with an alliance, the investigator from the, an investigator from the Air District informed the alliance that there were 16 diesel power generators operating at the site. The investigator stated that the maximum rated output of these generators is each under 50 brake horsepower. There is a clear exemption in the SIP in 21114.2 that provides that internal combustion engines that operate at a maximum output with a maximum output rating of 50 brake horsepower or less are, do not require permits, are not subject to the requirements of 301 and 302. If appellant were to, is arguing that there is a separate emission standard under 3116 and table 251 that defeats that exemption, it needed to be stated in the notice. And it was not. Well, Michonne, I guess to pick up on a question Judge Thomas had asked you, what if, I'm looking at the notice here at ER395, where there's the paragraph that discusses that diesel generators emit particular matter, they're discussing the toxics. What if they'd sent a notice that just contained that paragraph and didn't discuss the other pieces and still didn't cite the, why wouldn't that be enough? That wouldn't be enough because at that point, the city would have consulted with the Air District as it did, consulted the SIP regulation, found 21114, and found that each of the generators are categorically exempt. And if the only allegation was that the city is emitting diesel particulate air contaminants in violation of 301 and 302, which is what appellants argue in their opening brief and the reply brief before this Court, the city could have simply relied on the exemption. And under the holding in ONRC v. Plywood, which was reaffirmed in the Marina Point case discussed in the briefing. But that takes us to the, I guess, the substance of the violation. But it sounds like you'd concede that that would be sufficient notice? Sufficient notice to Of the toxics violation as opposed to the non-applicability of the brake horsepower exemption. No, Your Honor. The toxics trigger identified in appellant's briefing is not relying on 301 and 302, as they argue. They argue that they provided notice of a violation under 301 and 302 because and the response from the city and the Air District was that the permits required under 301 and 302 are exempt, are subject to the exemption in 21114.2. And you think that they would need to have cited 316? Yes. If the argument is that there is a separate emission standard, which is what 3116 is, and table 251, they are separate emissions standards for a separate argument of emissions violation. You know, I want to take a step back. You know, I always like to do that, especially with these kinds of allegations. It's clear you all know how to apply for a permit, right? You all know how to apply for a permit, and you establish these 16 generators without one. You knew you were doing something wrong, didn't you? No, Your Honor. And this is the merits argument that... Well, hold on. Let me give you more context, and maybe you can explain it to me in that context. Because in January 2022, that's when you put in these generators, correct? Correct. And then in August, July, August 2022, the city applied for a temporary permit from the Bay Area Air Quality Management District to operate two diesel electricity generators. So you knew how to apply for a permit, and then you didn't for these, though. Yes, that is correct, Your Honor. For the two generators that were at issue in August 2022, those were large generators. They were each well over 50 horsepower. I think one of them was about 170 horsepower. It's stated in the record. And those generators are of a completely different sort. Those are electrical generators. They are registered with the California Air Resources Board under the Portable Engine Registered Program. These are the PERP engines as identified in the briefing. And so for those engines, the city did indeed apply because the Air District informed that for those, you do need to apply for a permit. The generators at issue in this case, the 16 generators are light towers. Each are 5.1 Tier 4 final diesel engines, contain Tier 4 final 5.1 horsepower diesel engines that would clearly come under the exemption for small engines, 50 brake horsepower or less, under 211.14.2. So in fact, before the city received appellant's notice, it did not believe even for the 16 generators at the site, any permits were required. And that is what the Air District confirmed when the city consulted with the Air District, because the exemption in 211.14.2 applies individually. This is a categorical exemption for a certain class of equipment. And only upon receiving the- So is it the city's position that you could have had 100 of these generators so long as each of them were under 50? Is that what the city's position is? The city's position is- In other words, is this subject to being repeated again? With the city deciding, well, we're going to put in these generators that are less than 50 each, and I guess we're going to technically comply with. No, Your Honor. In this case, there is not a likelihood, any remote plausible likelihood of repeat, because all of the lights at issue have been fully replaced by permanent solar installations. The city was in the process. The original plan for the site was to have solar installations. The city was in the process of doing that when it received the notice from the appellant. Is that enough? I mean, because you kept at least one light tower online, and there's some suggestions in the record that there may not be enough electrical service there to fully light the site. Yes. Thank you. Thank you, Your Honor. And that is where the appellant is confusing the issues. And in the proceedings below, appellant did apply for a, or did move to supplement its complaint with additional facts concerning the two PERP generators that we just discussed, and the district court denied that motion, finding that there was, even there, that these generators, there was no dispute in the record that they were applied for but never operated. And the district court correctly found that there's no standing or that appellants had not presented any standing, established any standing to proceed on a installation of generators that had never been operated. Are there any light towers on the site currently? There are none. There are none. They were removed after the briefing was submitted to the district court, and even the one was subsequently removed. It was on standby while, to test all of the 17 solar light towers at the site, but there are none. On the standing issue, with respect to the toxics claim, why haven't the plaintiffs alleged an injury? At the time of the complaint, you've got this pollution going out into their communities. You know, even if it's abated later on, I don't view that as part of the injury prong of standing. So why no injury? So thank you, Your Honor. The standing analysis really depends on the challenged conduct. What is the challenged conduct? And this is why the district court considered the notice issue first, because the challenged conduct as — and the alleged violation, as appellants concede here, was a violation of 301 and 302, a requirement for permits. That violation was subject to the exemption in 211-14.2. Well, that seems to go to traceability, but I take you to also be challenging the plaintiff's very injury. Yes. Yes, Your Honor. For that challenged conduct. And the reason is that appellant relies on three declarations that were submitted in October 30th, 2022 — 2023, I'm sorry. At that point, there was one generator remaining on the site, one generator at 5.1 horsepower, clearly below the 1.14, the 50 brake horsepower — Well, I guess the timeline is these — if you're on the toxic side in particular, these are things that can accumulate, right? If you're dealing with, for example, lead emissions or other things, they build up over time. So why should it matter that the generators have stopped emitting that if they emitted it in the past and that's the source of the injury? The — first, the standing — the redress that appellants are seeking are — is — may I finish?  Yes. The redress that the appellant is seeking is civil penalties and injunctive relief. Standing must be established for both forms of redress. And on the civil penalties, the holdings in the Steel Co. decision and late law, reaffirmed in late law, is clear that civil — civil plaintiffs do not have standing to pursue civil penalties when the alleged violation was abated before the time the complaint is filed. The alleged violation was exceedance of 50 brake horsepower. There's a dispute about whether the 50 brake horsepower is considered individually or aggregated, but the district court assumed for the purposes of its analysis that appellant was correct on the merits of its aggregation theory and granted aggregation. Even under aggregation, the city was below 50 brake horsepower at the time the complaint was filed. There is no redress. As to the injunctive relief, there is no injunctive relief — there is no threat of recurring harm when the — those — the generators in use were entirely temporary, intended to be temporary, and have been fully replaced with permanent solar installations. And, in fact, appellant does not actually argue for recurring harm. As to the — the injury prong that the district court found, the district court's finding was that based on the declarations received on October 20 — October 2023, when there was only one light-towered issue and where the declarants were stating that there was a continuing harm, that the harm had not been abated, there was no attenuation of harm regardless of what the city was doing, whether there was 16 generators, whether there was 7, whether there was 50 brake horsepower, 35 brake horsepower, whether there was 5 horsepower, the declarants have stated in their declarations that there was no attenuation in the harm. And that was the basis for the district court's holding. I hope that answered your question. Do you have any other questions? Any other questions? Okay. Thank you very much. Thank you. And we'll give you 3 minutes. Thank you again for hearing our arguments, Your Honors. I'll address just a few points as quickly as I can. So on standing, the trial court's analysis on both standing and redressability is infected with an error that this court has rejected and the Supreme Court has rejected. And let me just — bear with me — I'm going to quote from the Ecological Rights Foundation. So the trial court's decision, quote, confuses the jurisdictional inquiry in Perrins. Does the court have the power under Article 3 to hear the case with the merits inquiry in Perrins? Did the defendant violate the law? So here the court found that the members of my client, the Alliance, didn't have standing because there could be no injury whatsoever from diesel generators that are less than 50 brake horsepower. So that's just — number one, that's contrary to Ecological Rights Foundation and other cases. And that's just not how pollution works. As our expert opined, seven generators is way over the limit for permitting and it can cause harm. The standing declarations tie the harm directly to the facility. We were concerned about the toxic emissions. We can't visit the green space. We can't open our windows. The windows are — Mr. Williams, could you, I guess, in your remaining time on the standing piece, I'd like to hear about redressability on both the civil penalties and the declaratory injunctive relief. Yeah, and I think the analysis is the same. The dispositive question, as my friends on the other side had espoused, is was the injury ongoing at the time that the complaint was filed? And here the answer is yes. There were generators running, seven of them. There were also 16 generators on site which had been installed without permits. And so under the Inland Empire's case, those so-called procedural violations, failures to obtain permits, do confer Article III standing when a plaintiff has been injured. And how does your relief redress that violation? So two things. So the injunction is incredibly important because the city right now is free to put up fences and start running generators. I mean, just like here, they did it overnight. They could do it again. An injunction would prevent them from doing that. And civil penalties, I think it's, as lay law says, when you hit someone in their pocketbook, they're less likely to do the same thing in the future. Do either of you have any other questions? Okay, thank you very much. We thank both counsel for their very helpful arguments this morning. This case is submitted and we are in recess until tomorrow. Thank you. All rise.
judges: THOMAS, MENDOZA, JOHNSTONE